Date signed July 28, 2009



_____
**PAUL MANNES**
**U. S. BANKRUPTCY JUDGE**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
#### at Greenbelt

| | |
|---|---|
| In re: | Case No. 09-20056PM |
| | Chapter 11 |
| Cloverleaf Enterprises, Inc., | |
| | |
| Debtor. | |

### MEMORANDUM OF DECISION

This case comes before the court on the Debtor's Motion for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code Enforcing the Protections of Sections 362 and 525 of the Bankruptcy Code ("the Motion") filed June 3, 3009.  The matter came before the court for hearing on July 23, 2009, and was fully argued by counsel for the Debtor and the Maryland Racing Commission ("the Commission).  The court bifurcated the hearing and limits its decision to the application of § 362(a) of the Bankruptcy Code.  Specifically, whether § 362(b)(4) is applicable in this instance.

The Motion was somewhat prescient in that on July 10, 2009, the Commission sent a letter to Kelley Rogers, president of the Debtor, stating its intent.

> In view of the above, the Commission will conduct a hearing to determine whether to: (1) withdraw its consent, under 15 USC §3004(a), for CEI to accept "inter-state off-track wagers"; (2) withdraw its approval, under BR Art., §11-804(b), for CEI to contract to hold pari-mutuel betting on thoroughbred races held at an out-of-state track; and (3) withdraw its authorization, under BR Art., §11-811(d), for CEI to conduct inter-track betting races received from a thoroughbred racetrack. (footnote omitted)

For the reasons set out hereafter, the court finds that holding such a hearing in the circumstances presented would be a violation of the automatic stay of § 362(a) of the Bankruptcy Code.  The parties are advised, however, that this ruling is limited soley

to the question as to whether the automatic stay is applicable to the proposed action and not whether such action may take place after a hearing on a motion for relief from stay filed by the Commission.

Section 362(b)(4) provides:

> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—

> (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power[.]

This case involves the licensing of the operations of a harness racing track from simulcasting out-of-state thoroughbred races and conducting parimutuel betting on these races. The court need not go into the history of this long-standing dispute between the thoroughbred industry and the standard-bred industry. These are two Maryland industries that may be in a state of terminal illness, and the parties might be described as in a situation that resembles rearranging the deck chairs on the Titanic. However, the authority of the Commission to oversee the simulcasting of live races is beyond dispute. *Md. Racing Commission v. Cloverleaf Enterprises, Inc.*, 738 A.2d 898 (Md. App. 1999).

The Debtor urges that the Commission unfairly favors one of its two charges in this internecine struggle. On the other hand, the Commission takes the view that it mediated a dispute among the various entities and the Debtor has seen fit to walk away from its contract obligations and seek the assistance of the Bankruptcy Court in reducing its obligations and what its principal has described as a "scorched earth policy."

The automatic stay of § 362(a) of the Bankruptcy Code is comprehensive, safeguarding the bankruptcy estate from piecemeal dissipation and ensuring that assets remain within the exclusive jurisdiction of the bankruptcy court pending their orderly and equitable distribution among creditors. *In re McMullen*, 386 F.3d 320, 324

(CA1 2004). However, the Bankruptcy Code excepts certain postpetition proceedings from the operation of the automatic stay. Here, notably, § 362(b)(4) of the Bankruptcy Code. This exception to the automatic stay is to be narrowly read. Specifically, the House and Senate Reports both noted that its application should be limited to situations in which a governmental entity is using its police power to prevent or stop violation of fraud, environmental protection, consumer protection, safety or similar police or regulatory laws. *See Bankruptcy Reform Act, 107th Congress–Senate Bill S. 420; Bankruptcy Reform Act, 107th Congress–House Bill H.R. 333.* As has been said, this exception to the automatic stay prevents the bankruptcy court from becoming a haven for wrongdoers. *In re Berg*, 230 F.3d 1165, 1167 (CA9 2000). As stated in the case of *In re McMullen* :

> [T]he courts have devised two interrelated, fact-dominated inquiries-the so-called "public policy" and "pecuniary purpose" tests-for assessing whether a particular governmental proceeding comes within the

subsection 362(b)(4) exception. (citations omitted). These inquiries contemplate that the bankruptcy court, after assessing the totality of the circumstances, determine whether the particular regulatory proceeding at issue is designed primarily to protect the public safety and welfare, or represents a governmental attempt to recover from property of the debtor estate, whether on its own claim, or on the nongovernmental debts of private parties. (citation omitted; emphasis added).

*McMullen* @ 325.

It is beyond dispute that this action was brought about to assist the Maryland Jockey Club of Baltimore City, Inc., Laurel Racing Association, Inc., the Maryland Thoroughbred Horsemen's Association, Inc. and the Maryland Horse Breeders Association, Inc. in collecting sums due these entities pursuant to the March 28, 2006, Cross-Breed Simulcasting Memorandum of Understanding. As these entities stated in their letter of April 20, 2009, "We are requesting payment of the amounts due. Additionally, we are requesting the assistance of the Maryland Racing Commission to assist in expediting payment." In sum, while counsel may argue what is involved is the health of the racing industry in Maryland, the fact is that the Commission is acting as nothing more than a collection agent on behalf of one of its offspring against another.

An appropriate Order will be entered.

cc:    Cloverleaf Enterprises, Inc.
       Nelson C. Cohen (Debtor's Counsel)
       Jonathan R. Krasnoff, Assistant Attorney General (Counsel for the Maryland
           Racing Commission)
       Lawrence D. Coppel (Counsel for the Maryland Thoroughbred Horsemen's
           Association, Inc. and Maryland Horse Breeders Association, Inc.)
       Jockey Club of Baltimore City, Inc.
       Laurel Racing Association, Inc.
       U.S. Trustee
       All Creditors and Parties Requesting Notice

**End of Memorandum**