### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
#### (Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **CLOVERLEAF ENTERPRISES, INC.** | ) | **Case No. 09-20056 PM** |
| | ) | **Chapter 11** |
| **Debtor.** | ) | |

_____

### DEBTOR'S RENEWED MOTION FOR APPROVAL OF
### AGREEMENT TO NEGOTIATE THE PROPOSED SALE OF
### <u>SUBSTANTIALLY ALL ASSETS OF THE DEBTOR</u>

Cloverleaf Enterprises, Inc., the Debtor, by and through the undersigned counsel, seeks approval of the Agreement to Negotiate executed by the Debtor, Cloverleaf Standardbred Owners Association, the owner of 100% of the Debtor ("CSOA"), and the prospective buyer, Rosecroft Future, LLC[1] ("Future LLC") and in support of this Motion, the Debtor respectfully states as follows:

#### <u>JURISDICTION</u>

1       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are Sections 105(a) and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code").

---

[1]  On September 11, 2009, Mark Vogel Companies, LLC assigned and transferred its interest in the Agreement to Negotiate to Rosecroft Future, LLC.

## BACKGROUND

**A.    Introduction**

4.    On June 3, 2009, (the "Petition Date"), the Debtor filed its voluntary petition under Title 11 of Chapter 11 of the Bankruptcy Code.

5.    The Debtor continues to operate its business and manage its affairs as debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

6.    No trustee, examiner or official committee of unsecured creditors has been formed or appointed.

7.    The Debtor originally filed its Motion for Approval of Agreement to Negotiate the Proposed Sale of Substantially All Assets of the Debtor on September 30, 2009.  However, the Debtor withdrew the Motion on December 3, 2009, because the Purchaser had not resolved issues with PNC Bank regarding the purchase of the PNC Bank debt.  Those issues have now been resolved.

**B.    Overview of the Debtor's Businesses**

8.    The Debtor is a Maryland corporation that owns and operates Rosecroft Raceway on 124 acres located in Fort Washington, Maryland.  The Raceway has been in operation since 1949 and hosts standardbred horse racing throughout the year.  In addition, Rosecroft accepts simulcast transmissions of standardbred, thoroughbred and quarterhorse racing from around the world and allows pari-mutuel betting.

**C.    The Relief Sought**

9.    The Debtor seeks court approval of the Agreement to Negotiate executed in connection with the sale of substantially all of the Debtor's assets, as described below.  The Debtor also seeks approval of the division of the Negotiation Fee between itself and CSOA.

2

**D.     Debtor's Efforts to Sell Its Business**

10.     Between 2002 and 2008, the Debtor attempted to find a purchaser for its assets. On at least four (4) occasions, prospective purchasers performed substantial due diligence investigations in contemplation of purchasing the Debtor's assets.  These sales did not, however, reach fruition.

11.     In the Fall of 2008, Mark Vogel[2] expressed an interest in purchasing substantially all of the Debtor's assets and operating the racetrack through an entity owned or controlled by him.  Those negotiations did not result in a signed agreement.  Negotiations resumed in the Spring of 2009, but the parties were unable to finalize the terms of the sale before the Debtor filed its voluntary petition.

**E.     The Agreement to Negotiate**

12.     In the six (6) plus month period since the filing of the voluntary petition, the Debtor and Mr. Vogel have continued to negotiate the terms of a sale of the Debtor's assets.  As of June 17, 2009, an Agreement to Negotiate was executed by the Debtor, CSOA and Mark Vogel Companies, LLC (the "Agreement to Negotiate").  A copy of the Agreement to Negotiate is attached as Exhibit A.

13.     Neither the Debtor nor CSOA was in a position to incur the legal and other expenses involved in the negotiation of the agreements needed to consummate a sale.  To facilitate the negotiation of the sale of the Debtor's assets, Mark Vogel Companies, LLC agreed to pay a negotiation fee of $100,000 (the "Negotiation Fee") to CSOA and the Debtor to defray the costs incurred by them in connection with the preparation of the Purse Agreement, the Real

---

[2] Mark Vogel owned Rosecroft Raceway between 1987 and 1991.

2449797.1

Estate Purchase and Sale Agreement and the Personal Property (Operating Assets) Purchase Agreement (collectively, the "Companion Agreements").

14.     The Agreement to Negotiate provides that the Negotiation Fee is not and will not in the future be considered a deposit under any agreement between the buyer and the Debtor or the buyer and CSOA. No part of the Negotiation Fee is refundable or to be credited to any sums owed either to the Debtor or CSOA.

15.     The Negotiation Fee was wired to Meyers, Rodbell & Rosenbaum, P.A., special counsel to the Debtor. Since received, the Negotiation Fee has been held in escrow by the Meyers firm, in a non-interest bearing account for the joint benefit of the Debtor and CSOA to pay or reimburse reasonable costs incurred by CSOA or the Debtor, incurred either prior to or subsequent to the date of the Agreement, in the negotiation and drafting of the Companion Agreements.

16.     The financial obligations to be paid from the Negotiation Fee include but are not limited to legal fees related to the preparation of the Companion Agreements due to the law firms of Meyers, Rodbell & Rosenbaum, P.A., Semmes, Bowen & Semmes and Zuckerman Spaeder LLP, plus fees for accounting services and tax advice related to the sale of the Debtor's assets. Subject to Court approval, the Debtor and CSOA have agreed that sixty percent (60%) of the Negotiation Fee will be payable to CSOA to reimburse it for the expenses, including legal fees, related to the preparation of the Purse Agreement. CSOA and the Debtor further agreed that forty percent (40%) of the Negotiation Fee will be paid to the Debtor to reimburse it for its expenses, including legal fees, related to the preparation of the sale agreements. If such fees and expenses of CSOA and the Debtor do not total $100,000, the remaining balance will be divided

4

among the parties, with CSOA receiving 60% of the balance and the Debtor receiving 40% of the balance.

17.     CSOA and the Debtor agreed that CSOA should receive sixty percent (60%) of the Negotiation Fee because it was anticipated, and proved to be accurate, that the Purse Agreement between CSOA and Future LLC was the more time-consuming agreement to negotiate and draft.  As more fully described in the Sale Motion, the Purse Agreement provides that Future LLC will pay CSOA certain amounts to provide, through its members (horsemen and breeders), live racing at Rosecroft.  As the name suggests, the Purse Agreement requires Future LLC to expend substantial sums to increase the size of the purses available for races at Rosecroft, and, thus, stimulate interest in harness racing.  Without live racing, simulcast transmissions would be virtually nonexistent.  Thus, negotiation of a Purse Agreement was critical to the transaction.  For that reason, sixty percent (60%) of the Negotiation Fee was to be devoted to the negotiation and drafting of  the Purse Agreement.

18.     The Agreement to Negotiate states it is subject to approval of the Bankruptcy Court.

**F.     Approval of the Agreement to Negotiate Is in the Best Interest of the Debtor and Its Creditors**

19.     The Debtor seeks an order approving its execution of the Agreement to Negotiate and approving the division of the Negotiation Fee between the Debtor and CSOA.  Section 105 of the Bankruptcy Code permits the Court to issue any order, process or judgment necessary or appropriate to carry out the provisions of the Bankruptcy Code.  The power to issue an order under Section 105 of the Bankruptcy Code must derive from another Bankruptcy Code provision.  *Deutche Bank v. Metromedia Fiber Network (In re Metromedia Fiber Network)*, 416 F.3d 136 (2nd Cir. 2005).  Here, the Debtor seeks an order approving an agreement that will

5

facilitate the sale of property of the estate.  Such an order is appropriate to carry out the provisions of Bankruptcy Code Section 363 which permits a debtor in possession to use, sell or lease property of the estate, other than in the ordinary course of business.  Because the Agreement to Negotiate is an integral step in what the Debtor believes will ultimately result in a sale of substantially all of its assets, the Debtor believes that an order approving the Agreement to Negotiate is necessary and appropriate to carry out the provisions of the Bankruptcy Code.

20.     The Debtor also seeks Court approval of the division agreed to by the Debtor and CSOA of the Negotiation Fee paid by the prospective purchaser.  CSOA and the Debtor have agreed that CSOA will receive sixty percent (60%) of the Negotiation Fee and the Debtor will receive the remaining forty percent (40%) to defray the legal and other expenses incurred in the preparation and negotiation of the Companion Agreements.

21.     The Debtor's execution of the Agreement to Negotiate  is in the best interest of the Debtor and its creditors.  Payment of the Negotiation Fee allows the Debtor to defray some of the costs in obtaining legal advice in connection with the negotiation of complex agreements to sell the Debtor's real and personal property and to assign certain of the Debtor's executory contracts.  Debtor's special counsel brought its depth of knowledge of the Debtor's business and the horseracing industry to the negotiation and drafting process, providing valuable advice to the Debtor in its efforts to obtain the best possible terms for its creditors.

The Debtor respectfully requests that the Court enter an order:

1)     Granting the Debtor's Motion; and

2)     For such other and further relief as is just and proper.

6

Dated:  December 15, 2009                         Respectfully submitted,

/s/ Nelson C. Cohen

Nelson C. Cohen (08994)
Zuckerman Spaeder LLP
1800 M Street, N.W., Suite 1000
Washington, DC  20036
(202)778-1800 — Telephone
(202) 822-8106 — Facsimile
ncohen@zuckerman.com — E-Mail

*Counsel to the Debtor*

2449797.1

## CERTIFICATE OF SERVICE

I, Nelson C. Cohen, hereby certify that on December 15, 2009, a copy of the forgoing

RENEWED MOTION OF DEBTOR FOR APPROVAL OF AGREEMENT TO NEGOTIATE

and proposed ORDER were sent electronically to:

Jeanne M. Crouse, Esq.
Office of the U.S. Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD  20770

Michael D. Nord, Esq.
Jason W. Hardman, Esq.
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, MD  21202

Lawrence D. Coppel, Esq.
Susan J. Klein, Esq.
Gordon, Feinblatt, Rothman,
Hoffberger & Hollander, LLC
233 East Redwood Street
Baltimore, MD  21202

Howard M. Heneson, Esq.
Howard M. Heneson, P.A.
810 Gleneagles Court, Suite 301
Towson, MD  21286

Jonathan R. Krasnoff, Esq.
Bruce C. Spizler, Esq.
Office of the Attorney General
500 North Calvert Street, Suite 406
Baltimore, MD  21202

Darek Bushnaq, Esq.
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, MD  21202

Joseph A Lynott, III, Esq.
Lynott, Lynott & Parsons, P.A
11 N. Washington Street
Suite 220
Rockville, MD  20850

2449797.1

Scott W. Foley, Esq.
Shapiro Sher Guinot & Sandler
36 S. Charles St., 20th Floor
Baltimore, MD  21201-3147

Robert H Rosenbaum, Esq.
Meyers, Rodbel & Rosenbaum, P.A.
6801 Kennilworth Ave., Suite 400
Riverdale, MD  20737


and via United States First Class Mail to the following:

Finger Lakes Racing, Association, Inc.
c/o Marvin T. Dubin, Esq
600 Rand Building
Buffalo, NY  14202

Steve P. Xanthos
12328 Pulaski Highway
Joppa, MD  21085




/s/ Nelson C. Cohen
Nelson C. Cohen

2449797.1