Date signed July 13, 2010



PAUL MANNES
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| CLOVERLEAF ENTERPRISES, INC. | : | Case No. 09-20056PM |
| | : | Chapter 11 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

**MEMORANDUM OF DECISION**

Before the court are the First Interim Applications for Compensation filed by the law firm of Zuckerman Spaeder LLP ("Zuckerman"), Counsel to Cloverleaf Enterprises, Inc. ("Debtor" or "CEI"), and by the law firm of Meyers, Rodbell & Rosenbaum, P.A., Special Counsel to the Debtor ("Special Counsel"). Zuckerman seeks interim compensation in the amount of $725,222.95 and reimbursement of expenses in the amount of $31,471.70. Special Counsel seeks interim compensation of $185,075.00 and reimbursement of expenses in the amount of $1,511.93. The Office of the United States Trustee (the "U.S. Trustee") filed timely objections to both applications.

The matters came before the court for a full day's hearing on June 17, 2010. Testimony was received from Thomas Cook, Esquire, President of the Cloverleaf Standardbred Owners Association ("CSOA"); Robert H. Rosenbaum, on behalf of Special Counsel; Nelson C. Cohen, on behalf of Zuckerman Spaeder; and Franklin Goldstein, a lobbyist employed as counsel to the law firm Semmes Bowen and Semmes. The court finds the testimony of the four witnesses credible in all respects.

The essence of the opposition is that Special Counsel was riding two horses in the same race, namely, that it was representing the CSOA, the parent company and sole shareholder of the

Debtor, at the same time that it was representing the Debtor.  The U. S. Trustee urges that Zuckerman had a duty to disclose to the court that Special Counsel was representing a related party, CSOA, that held an interest adverse to the bankruptcy estate.  According to the U.S. Trustee, rather than disclosing this representation to all parties in interest so that everyone would be well aware of the situation from the very beginning,  Zuckerman signed off on agreements that provided that the transactions were to be kept secret, thus falling short of its fiduciary obligations to the bankruptcy estate and its duty of candor to the court.  The U. S. Trustee also urges that the services rendered by Zuckerman did not benefit the bankruptcy estate, and further that the Zuckerman's fee Application does not comport with the "Compensation Guidelines for Professionals in the United States Bankruptcy Court for the District of Maryland", as contained in Appendix D to the Local Bankruptcy Rules.

The court will first address the latter point raised by the U.S. Trustee, dealing with the practice described as "lumping" by Judge Schneider in the case of  *In re Leonard Jed*, 103 B.R. 706, 713 (BC Md. 1989):

> (2) Lumping. This term refers to the grouping of different tasks within one block of time on a time record. It is a practice universally disapproved by bankruptcy courts for two reasons. One, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Two, it prevents the Court from determining whether individual tasks were expeditiously performed within a reasonable period of time because it is impossible to separate into components the services which have been lumped together. The Court has found approximately sixty occurrences of "lumping" in this fee application and, with a few exceptions, will disallow all of them. *In re Seneca Oil Co.*, 65 B.R. 902, 909 (Bankr.W.D.Okla.1986); *In re Woerner*, 67 B.R. 685, 687 (Bankr.E.D.Pa.1986); *In re Wildman*, 72 B.R. at 709; *In re Bible Deliverance Evangelistic Church*, 39 B.R. 768, 777 (Bankr.E.D.Pa.1984); *In re Pettibone Corp.*, 74 B.R. at 32; *In re Metro Transportation Co.*, 78 B.R. at 418.

The U.S. Trustee identified some of the many occurrences of this practice.  The court, following Judge Schneider's lead, will not undertake counsel's task to identify what time is allocated for a specific task. Where lumping occurs, there will be a substantial disallowance.

The U.S. likewise seeks a diminution of the amount allowed because of the absence of benefit to the estate by the services rendered for which compensation is sought. Here, there are two considerations for the court.  First it must be remembered that this is an application for interim allowance of attorneys' fees under 11 U.S.C. § 331. Such awards are not final orders and are subject to the "bankruptcy court's complete freedom to alter [them] at any time up until the

bankruptcy case closes." *In re Computer Learning Ctrs., Inc*., 407 F.3d 656, 662 (CA4 2005). While, as the U.S. Trustee points out, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained, *Carroll v. Wolpoff & Abramson,* 53 F.3d 626, 630 (CA4 1995) (citing *Farrar v. Hobby*, 506 U.S. 103 (1992) and *Hensley v. Eckerhart*, 461 U.S. 424 (1983)), debtors' attorneys are not guarantors of favorable results.  Indeed, the case of *In re Pro-Snax Distribs., Inc*., 157 F.3d 414, 426 (CA5 1998), relied upon by the U.S. Trustee is in the minority and has been soundly criticized for its requirement of identifiable, tangible and material benefits to the bankruptcy estate.  As explained by Chief Judge Chasanow in the case of *In re Vu*, 366 B. R. 511, 516-517 (D. Md. 2007):

> Courts have reached different conclusions as to the proper construction of the requirement that an attorney's services benefit the bankruptcy estate under § 330(a)(3)(C) & (4)(A)(ii)(I). The United States Court of Appeals for the Fourth Circuit has not yet addressed this question. The Second Circuit has held that § 330 imposes an objective test "based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances." *In re Ames Dep't Stores, Inc*., 76 F.3d 66, 72 (2d Cir.1996) (citing *In re Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir.1995)), overruled on other grounds by *Lamie v. United States Tr.*, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). *See generally* 3 Collier on Bankruptcy ¶ 330.04(1)(b)(iv) (15th ed. rev.2006) ("[T]he 'reasonably likely to benefit the estate' test should be applied in an objective manner, based upon the services a reasonable lawyer would have performed in the same circumstances."). The Fifth Circuit, however, has held that the services must have actually "resulted in an identifiable, tangible, and material benefit to the bankruptcy estate." *Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distribs., Inc.)*, 157 F.3d 414, 426 (5th Cir.1998). A Bankruptcy Appellate Panel for the Ninth Circuit has since considered the approaches adopted by *Ames* and *Andrews & Kurth*, and has adopted the Second Circuit's approach, holding that § 330 "does not require that the services result in a material benefit to the estate in order for the professional to be compensated; the applicant must demonstrate only that the services were 'reasonably likely' to benefit the estate at the time the services were rendered." *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co.* (*In re Mednet, MPC Corp*.), 251 B.R. 103, 108 (9th Cir. BAP 2000).

In light of the U.S. Trustee's contention that the Fifth Circuit's construction of § 330 is superior and should be adopted by this court, an examination of the relevant statutory language is necessary. "Under the most basic canon of statutory construction, [a court] begin[s] interpreting a statute by examining the literal and plain language of the statute.... Absent explicit legislative intent to the contrary, the statute should be construed according to its plain and ordinary meaning." *Carbon Fuel Co. v. USX Corp.*, 100 F.3d 1124, 1133 (4th Cir.1996) (citing *Williams*

*v. United States Merit Sys. Protection Bd.*, 15 F.3d 46, 49 (4th Cir.1994)); *United States v. Allen*, 2 F.3d 538, 539 (4th Cir.1993)). In *In re Mednet, MPC Corp.*, 251 B.R. 103 (CA9 BAP 2000), the Ninth Circuit Bankruptcy Appellate Panel reviewed the divergent constructions of § 330 adopted by the Second and Fifth circuits and concluded that the Fifth Circuit's interpretation in *Pro-Snax*, *supra*, was not supported by either the text of § 330 or sound policy. *Mednet* persuasively explained the rationale for following the approach of the Second Circuit, as set forth in the case of *In re Ames Dep't Stores, Inc.*, 76 F.3d 66 (CA2 1996):

> The Fifth Circuit reasoning that a professional's services are only compensable if they result in a material benefit to the estate does not comport with a strict reading of the statute. Section 330 clearly states that (1) services are compensable if they were "necessary ... or beneficial at the time at which the service was rendered," and (2) services should not be compensable if they were not "reasonably likely to benefit the debtor's estate." § 330(a)(3)(A)(C) and (a)(4)(A)(ii)(I). The statute does not require that the services result in a material benefit to the estate in order for the professional to be compensated; the applicant must demonstrate only that the services were "reasonably likely" to benefit the estate at the time the services were rendered. The statute is clear and unambiguous. In our view, the Fifth Circuit's reading of the statute does not comport with the clear meaning of the 1994 amendments, would unreasonably restrict legitimate professional efforts toward effective estate administration, and could well cause attorneys to shy away from work that might benefit the estate.

*Mednet*, 251 B.R. at 108. *See also* 3 COLLIER ON BANKRUPTCY ¶330.04[1][b][iv] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev.)  This construction is consistent with the plain and ordinary meaning of the language of § 330(a)(3)(C) requiring analysis of the benefit conferred by the services "at the time at which the service was rendered", as well as with the language of § 330(a)(4) barring an award of fees if the services were not "reasonably likely to benefit the debtor's estate." This language unambiguously requires consideration of whether, at the time at which the services were rendered, a reasonable attorney would have believed that they would benefit the estate, rather than a subsequent consideration of the practical effects actually achieved by the attorney's services.

Debtor's facility has been marketed off and on for five years. To those involved, there appeared to be no other alternatives to the course of action taken in the prosecution of this case. In addition to the unfavorable financial situation facing the country, Debtor had the unceasing opposition of the thoroughbred industry.  Nothing has been easy for it either before the Maryland legislature or during the pendency of this case.

As to the other issue raised by the U.S. Trustee (i.e., Zuckerman's failure to disclose Special Counsel's relationship with CSOA), the primary concern is the role of William Meyers, special counsel to CEI, as primary scrivener of the purse agreement by and between CSOA and Rosecroft Future LLC, the Mark Vogel entity that was the potential purchaser of the Debtor's assets.  CEI was not directly involved in the subject of the agreement; however, as explained by Mr. Meyers, he was asked by the president of CEI to take on the task of drafting the agreement, due to the incapacity of Franklin Goldstein.  While Mr. Meyers had no experience with such agreements, in the tradition of generalists in the practice of law, he obtained a copy of the Purse Agreement that had been drafted in connection with the aborted sale to Penn National and altered it for the current transaction. While Mr. Meyers was present at nearly every meeting where the purse agreement was discussed, he took no role whatsoever in the negotiation of the agreement.  His marching orders from his client, CEI, were to facilitate the making of the agreement, as there was absolutely no possibility of a sales agreement being consummated without an accompanying purse agreement. Likewise, there could be no sale without some form of gambling permitted on the premises. After being drafted by Mr. Meyers, the agreement would then be forwarded to the contracting parties for their review and comments.  The court finds that the concern of Mr. Meyers was the making of a purse agreement and not the content of the agreement. He served as a catalyst to facilitate the making of an agreement where time was of the essence.  In light of the foregoing, the court concludes, inasmuch as Special Counsel did not hold an adverse interest, Zuckerman did not breach either its fiduciary obligations to the bankruptcy estate or its duty of candor to the court. However, the better practice, under the circumstances presented, would have been to identify the unusual role of Mr. Meyers.

The court will allow, for the most part, interim compensation for both Zuckerman and Special Counsel in the amount sought.  Appropriate orders will be entered.

cc:    Debtor
       Debtor's Counsel
       U.S. Trustee
       Jonathan R. Krasnoff, Assistant Attorney General, Office of the Attorney General, 500
            North Calvert Street, Ste. 406, Baltimore, MD 21202
       Lawrence D. Coppel, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, 233
            East Redwood Street, Baltimore, MD 21202
       Darek Bushnaq, Venable LLP, 750 East Pratt Street, Suite 900, Baltimore, MD 21202
       Michael D. Nord, Gebhardt & Smith LLP, 1 South Street, Ste. 2200, Baltimore, MD
            21202

Joseph A. Lynott, III, Lynott, Lynott & Parsons, P.A., 11 N. Washington Street, Ste. 220 Rockville, MD 20850

Scott W. Foley, Shapiro Sher Guinot & Sandler, 36 S. Charles Street, 20th Fl., Baltimore, MD 21201

Robert H. Rosenbaum, Meyers, Rodbell & Rosenbaum, P.A., Kenilworth Ave., Ste. 400 Riverdale, MD 20737

All Creditors and Parties Requesting Notice

**End of Order**